# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH

| | | |
|---|---|---|
| **ROYAL PALM OPTICAL, INC., on behalf of** § | | |
| **itself and all others similarly situated,** § | | |
| § | | |
| **Plaintiff,** § | **CIVIL ACTION NO.:** | |
| § | **9:20-cv-80749** | |
| **v.** § | | |
| § | | |
| **STATE FARM MUTUAL AUTOMOBILE** § | | |
| **INSURANCE COMPANY and STATE** § | | |
| **FARM FLORIDA INSURANCE COMPANY,** § | | |
| § | | |
| **Defendants.** § | | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
## CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL STANDARD......................................................................................... 3

III.  PLAINTIFF FAILS TO STATE A CLAIM ...................................................... 3

      A.    Plaintiff's Breach Of Contract Claim Should Be Dismissed ................................. 3

            i.    Coverage For Plaintiff's Alleged Losses Is Barred By The Virus
                  Exclusion................................................................................................ 4

            ii.   Even Without The Virus Exclusion, Plaintiff Does Not Allege
                  Covered Losses ........................................................................................ 9

            iii.  The Policy's Civil Authority Provision Is Inapplicable........................... 11

            iv.   The Policy's "Loss of Income" Coverage Is Inapplicable....................... 15

            v.    Additional Policy Exclusions Bar Plaintiff's Claims ............................. 16

            vi.   Plaintiff Lacks Standing As To State Farm Mutual Automobile Ins.
                  Co........................................................................................................... 17

      B.    The Putative Nationwide Class Allegations in the Complaint Should Be
            Dismisssed ......................................................................................................... 18

      C.    Plaintiff's Declaratory Judgment Claim Should Be Dismissed........................... 20

IV.   CONCLUSION.................................................................................................. 20

## TABLE OF AUTHORITIES

CASES

*Alexis v. Southwood L.P.*,
　792 So. 2d 100, 102 (La. App. 4 Cir. July 18, 2001) ................................................................. 6

*Am. Int'l Grp., Inc. v. Cornerstone Bus., Inc.*,
　872 So. 2d 333 (Fla. 2d DCA 2004) ............................................................................ 18, 19

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ................................................................................................ 3, 9

*Atkinson v. Wal-Mart Stores, Inc.*,
　2009 WL 1458020 (M.D. Fla. May 26, 2009) .................................................................... 19

*Avena v. Imperial Salon & Spa, Inc.*,
　740 F. App'x 679 (11th Cir. 2018) .............................................................................. 3, 16

*Bahama Bay II Condo. Ass'n, Inc. v. United Nat'l Ins. Co.*,
　374 F. Supp. 3d 1274 (M.D. Fla. 2019) ........................................................................... 16

*Barron v. Snyder's-Lance, Inc.*,
　2015 WL 11182066 (S.D. Fla. Mar. 20, 2015) ................................................................... 19

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ................................................................................................... 3

*BMW of N. Am., Inc. v. Gore*,
　517 U.S. 559 (1996) ................................................................................................... 8

*Blobner v. R.T.G. Furniture Corp*,
　2019 WL 3808130 (M.D. Fla. June 24, 2019) .................................................................... 19

*Bohlke v. Shearer's Foods, LLC*,
　2015 WL 249418 (S.D. Fla. Jan. 20, 2015) ...................................................................... 19

*BPI Sports, LLC v. Thermolife Int'l, LLC*,
　2020 U.S. Dist. LEXIS 62662 (S.D. Fla. Jan. 9, 2020) .......................................................... 3

*Bristol-Myers Squibb Co. v. Superior Court*,
　137 S. Ct. 1773 (2017) .............................................................................................. 19

*Brooks v. Blue Cross and Blue Shield of Fla., Inc.*,
　116 F.3d 1364 (11th Cir. 1997) .................................................................................... 18

*Century Sur. Co. v. Broward Collision, Inc.*,
　2014 WL 11761921 (S.D. Fla. Dec. 19, 2014) ..................................................................... 3

*Church of the Palms-Presbyterian (U.S.A.), Inc. v. Cincinnati Ins. Co.*,
   404 F. Supp. 2d 1339 (M.D. Fla. 2005), *aff'd*, 189 F. App'x 932 (11th Cir.
   2006) ........................................................................................................................5

*Cruson v. Jackson Nat'l Life Ins. Co.*,
   954 F.3d 240 (5th Cir. 2020) .................................................................................19

*Cytopath Biopsy Lab., Inc. v. U.S. Fidelity & Guaranty Co.*,
   774 N.Y.S.2d 710 (App. Div. 2004) ......................................................................16

*Dapeer v. Neutrogena Corp.*,
   95 F. Supp. 3d 1366 (S.D. Fla. 2015) ....................................................................19

*Decerbo v. Melitta USA Inc.*,
   2016 WL 7206244 (M.D. Fla. Oct. 17, 2016) ........................................................19

*Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*,
   711 So. 2d 1135 (Fla. 1998)...........................................................................1, 5, 8

*Dickie Brennan & Co. v. Lexington Ins. Co.*,
   636 F.3d 683 (5th Cir. 2011) ...................................................................12, 13, 14

*E. Enters. v. Apfel*,
   524 U.S. 498 (1998).................................................................................................8

*Evanston Ins. Co. v. Haven S. Beach, LLC*,
   152 F. Supp. 3d 1370 (S.D. Fla. 2015) ................................................................2, 4

*Garcia v. Fed. Ins. Co.*,
   969 So. 2d 288 (Fla. 2007).......................................................................................2

*Garcia v. Kashi Co.*,
   43 F. Supp. 3d 1359 (S.D. Fla. 2014) ....................................................................19

*Gas Kwick, Inc. v. United Pac. Ins. Co.*,
   58 F.3d 1536 (11th Cir. 1995) ..............................................................................2, 3

*Gowland v. Aetna*,
   143 F.3d 951 (5th Cir. 1998) ...................................................................................2

*Halmos v. Bomadier Aero. Corp.*,
   404 F. App'x 376 (11th Cir. 2010) ..........................................................................3

*Harris v. U. S. Fid. & Guar. Co.*,
   409 So. 2d 1210 (Fla. 1st DCA 1982) ....................................................................10

*Hartford Ins. Co. v. Miss. Valley Gas Co.*,
   181 F. App'x 465 (5th Cir. 2006) .............................................................................9

*Holliday v. Albion Labs., Inc.*,
   2015 WL 10857479 (S.D. Fla. June 9, 2015)....................................................................19

*Interline Brands, Inc. v. Chartis Specialty Ins. Co.*,
   749 F.3d 962 (11th Cir. 2014) .........................................................................................2

*Jones v. Utica Mut. Ins. Co.*,
   463 So. 2d 1153 (Fla. 1985).............................................................................................2

*Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*,
   2010 WL 4026375 (E.D. La. Oct. 12, 2010) ...................................................................14

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarmar, LLP v. Nat'l Fire Ins.
   Co.*,
   2007 WL 2489711 (M.D. La. Aug. 29, 2007) .................................................................13

*Keetch v. Mut. of Enumclaw Ins. Co.*,
   831 P.2d 784 (Wash. Ct. App. 1992)...............................................................................11

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*,
   2020 WL 886120 (D.S.C. Feb. 24, 2020) .......................................................................13

*LaFarge Corp v. Travelers Indem. Co.*,
   118 F.3d 1511 (11th Cir. 1997) ........................................................................................4

*Landmark Hosp., LLC v. Cont'l Cas., Co.*,
   2002 WL 34404929 (C.D. Cal. July 2, 2002) .................................................................16

*Leon v. Cont'l AG*,
   301 F. Supp. 3d 1203 (S.D. Fla. 2017).............................................................................19

*Mama Jo's, Inc. v. Sparta Ins. Co.*,
   2018 WL 3412974 (S.D. Fla. June 11, 2018) ...............................................................9, 10

*MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*,
   558 F.3d 1184 (10th Cir. 2009) ......................................................................................16

*Mejia v. Citizens Prop. Ins. Corp.*,
   161 So. 3d 576 (Fla. 2d DCA 2014) ...............................................................................10

*Metro Brokers, Inc. v. Transportation Ins. Co.*,
   603 F. App'x 833 (11th Cir. 2015) ...................................................................................7

*Milgram v. Chase Bank USA, N.A.*,
   2020 WL 409546 (S.D. Fla. Jan. 25, 2020) ...................................................................3, 9

*Molock v. Whole Foods Mkt. Grp., Inc.*,
   952 F.3d 293 (D.C. Cir. 2020)........................................................................................20

*Mount Vernon Fire Insurance Co. v. Adamson*,
   2010 WL 3937336, at *1 (E.D. Va. Sept. 15, 2010), *report and recommenda-tion adopted*, 2010 WL 3937335 (E.D. Va. Oct. 6, 2010) ......................................................6

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Texpak Group N.V.*,
   906 So. 2d 300 (Fla. 3d DCA 2005) ...................................................................................10

*National Children's Expositions Corp. v. Anchor Ins. Co.*,
   279 F.2d 428 (2d Cir.1960) ..................................................................................................11

*Not Home Alone, Inc. v. Phila. Indem. Ins. Co.*,
   2011 WL 13214381 (E.D. Tex. Mar. 30), *adopted,* 2011 WL 13217067 (E.D.
   Tex. Apr. 8, 2011 ...........................................................................................................13, 14

*Paradies Shops, Inc. v. Hartford Fire Ins. Co.*,
   2004 WL 5704715 (N.D. Ga. Dec. 15, 2004) .......................................................................13

*Pension Benefit Guar. Corp. v. R.A. Gray & Co.*,
   467 U.S. 717 (1984) ...............................................................................................................8

*Petroterminal de Panama, S.A. v. Houston Cas. Co.*,
   114 F. Supp. 3d 152 (S.D.N.Y. 2015), *aff'd*, 659 F. App'x 46 (2d Cir. 2016) .......................17

*Petroterminal de Panama, S.A. v. Houston Cas. Co.*,
   659 F. App'x 46 (2d Cir. 2016) ...........................................................................................17

*Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*,
   311 F.3d 226 (3d Cir. 2002) ...................................................................................................9

*Prado-Steiman ex rel. Prado v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) .....................................................................................18, 19

*Ramada Inn Ramogreen, Inc. v. Travelers Indem. Co. of Am.*,
   835 F.2d 812 (11th Cir. 1988) ..............................................................................................11

*S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*,
   2008 WL 450012 (S.D. Tex. Feb. 15, 2008) ....................................................................13, 14

*Sanchez-Knutson v. Ford Motor Co.*,
   2015 WL 11197772 (S.D. Fla. July 22, 2015) ...................................................................18, 19

*Snyder v. Green Roads of Fla., LLC*,
   2020 WL 42239 (S.D. Fla. Jan. 3, 2020) ..............................................................................19

*Somethings Fishy Enterprises., Inc. v. Atl. Cas. Ins. Co.*,
   415 F. Supp. 3d 1137 (S.D. Fla. 2019) ..................................................................................10

*Source Food Technology, Inc. v. U.S. Fidelity & Guaranty Co.*,
    465 F.3d 834 (8th Cir. 2006) ...........................................................................................11

*Speier-Roche v. Volkswagen Corp. of Am.*,
    2014 WL 1745050 (S.D. Fla. Apr., 30, 2011) ...............................................................2

*State Farm Fire & Cas. Co. v. Steinberg*,
    393 F.3d 1226 (11th Cir. 2004) ......................................................................................4

*Stidham v. Tex. Comm'n on Private Sec.*,
    418 F.3d 486 (5th Cir. 2005) ..........................................................................................8

*Syufy Enters. v. Home Ins. Co.*,
    1995 WL 129229 (N.D. Cal. Mar. 21, 1995) ...............................................................13

*Tamiami Condo. Warehouse Plaza Ass'n, Inc. v. Markel Am. Ins. Co.*,
    2019 WL 4863378 (S.D. Fla. Oct. 2, 2019) .................................................................20

*Taurus Holdings, Inc. v. U.S. Fidelity & Guaranty Co.*,
    913 So. 2d 528 (Fla. 2005) .............................................................................................4

*Topping v. U.S. Dep't of Educ.*,
    510 F. App'x 816 (11th Cir. 2013) ................................................................................3

*Toback v. GNC Holdings, Inc.*,
    2013 WL 5206103 (S.D. Fla. Sept. 13, 2013) .............................................................19

*Travelers' Ins. Co. v. Peake*,
    89 So. 418 (Fla. 1921) ....................................................................................................1

*Tuepker v. State Farm Fire & Cas. Co.*,
    507 F.3d 346 (5th Cir. 2007) ..........................................................................................7

*United Air Lines, Inc. v. Ins. Co. of State of Pa.*,
    439 F.3d 128 (2d Cir. 2006) ...................................................................................13, 14

*United Airlines, Inc. v. Ins. Co. of State of Pa.*,
    385 F. Supp. 2d 343 (S.D.N.Y. 2005), *aff'd*, 439 F.3d 128 (2d Cir. 2006) ..............13

*United Specialty Insurance Co. v. Davis*,
    2020 WL 1445484 (S.D. Fla. Feb. 19, 2020) ...............................................................7

*Univ. Image Prods., Inc. v. Chubb Corp.*,
    703 F. Supp. 2d 705 (E.D. Mich. 2010), *aff'd sub nom. Univ. Image Prods.,*
    *Inc. v. Fed. Ins. Co.*, 475 F. App'x 569 (6th Cir. 2012) .........................................9, 10

*Varner v. Domestic Corp.*,
    2017 WL 3730618 (S.D. Fla. Feb. 7, 2017) ...............................................................19

*Williams v. State Farm Fire & Cas. Ins. Co.*,
    581 F. App'x 733 (11th Cir. 2014) ..........................................................................6

*Wooden v. Bd. of Regents of Univ. Sys. of Ga.*,
    247 F.3d 1262 (11th Cir. 2001) ...................................................................18, 19

*Worldwide Sorbent Prod., Inc. v. Invensys Sys., Inc.*,
    2014 WL 12597394 (E.D. Tex. July 31, 2014) ......................................................16

**OTHER AUTHORITIES**

U.S. CONST., amends. 5, 14 ...........................................................................................8

FLA. CONST., art. I § 9 ..................................................................................................8

FLA. CONST., art. X § 6(a) .............................................................................................8

Defendants State Farm Mutual Automobile Insurance Company and State Farm Florida Insurance Company (collectively, "State Farm") move to dismiss Plaintiff's Class Action Complaint ("Compl."), pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1).

## I.    INTRODUCTION

Plaintiff has sued State Farm for coverage of business interruption losses that allegedly occurred "as a result of social distancing and/or stay-at-home orders issued in connection with the COVID-19 global pandemic" caused by the novel "coronavirus." (Compl. ¶¶ 1, 15, 17.) Plaintiff asserts claims for a declaratory judgment and breach of contract, alleging the improper denial of coverage under the Loss of Income and Civil Authority provisions of its policy endorsement.

Plaintiff's claims are barred by the clear language of its Businessowners Insurance Policy (the "Policy").[1] In order to trigger coverage, the Policy requires "accidental direct physical loss to" property. (Policy at 3.) The presence or suspected presence of a virus, however, does not constitute the requisite "accidental direct physical loss to" property to trigger coverage. Under Florida law, examples of direct physical loss include damage caused by fires, sink holes, and hurricane winds, *i.e.*, perils that cause actual, tangible structural damage to property.

Moreover, the Policy contains a Virus Exclusion barring coverage for "any loss which would not have occurred in the absence of ... Virus." (Policy at 5-6.) Plaintiff's factual allegations establish that this exclusion bars its claims. (Compl. ¶¶ 15-20.) Long-standing Florida law establishes that "where a particular risk is expressly and clearly excepted from the risks assumed by the insurer, the courts have no power to enforce indemnity for losses or injuries resulting from such excepted risks, as expressed by the indemnity contract contained in the policy." *Travelers' Ins. Co. v. Peake*, 89 So. 418, 418 (Fla. 1921); *see also Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1138 (Fla. 1998) (upholding policy exclusion).

---

[1]  All Exhibits are attached to the Declaration of Benjamine Reid.  True and correct copies of plaintiff's policy documents are compiled as Exhibit A.  The policy booklet (referred to herein as "Policy") is found on bates-numbered pages 000068-107.  Certain plaintiffs have moved the JPML, pursuant to 28 U.S.C. § 1407, to create an MDL for various actions involving business interruption insurance policies. (MDL No. 2942.)  State Farm, along with others, maintains that an MDL should not be created.

"Under Florida law, interpretation of an insurance contract is a matter of law to be decided by the court." *Gas Kwick, Inc. v. United Pac. Ins. Co.*, 58 F.3d 1536, 1538–39 (11th Cir. 1995); *see also Jones v. Utica Mut. Ins. Co*., 463 So. 2d 1153, 1157 (Fla. 1985). "[I]nsurance contracts are construed according to their plain meaning." *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291 (Fla. 2007). "If the language of a policy is not ambiguous, the Court applies the plain language of the policy to the allegations in the Underlying Complaint." *Evanston Ins. Co. v. Haven S. Beach, LLC*, 152 F. Supp. 3d 1370, 1374 (S.D. Fla. 2015). Here, the Policy's plain language excludes coverage for losses that occur as a result of a virus.

Insurance companies exclude certain causes of loss where the risk is difficult or impossible to estimate and may be catastrophic—as it is for viruses, as was demonstrated by the Severe Acute Respiratory Syndrome (SARS) outbreak in 2002-03 and is now shown again by the COVID-19 pandemic.[2] *Cf. Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998) (noting that "[i]t is uneconomical for private insurance companies to provide flood insurance"). Exclusions "allow creation of a policy that provides the insured the coverage it needs at a price it can afford. Without such exclusions, coverage would undoubtedly be more expensive." *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 967 (11th Cir. 2014) (Florida law). To impose liability retroactively for an excluded peril, as Plaintiff asks the Court to do, would arbitrarily impose an inequitable burden on State Farm and other insurers to cover a risk that their policies explicitly and unambiguously informed policyholders was not covered and for which the insurers did not charge a premium. Such a result would contravene settled Florida law in insurance cases and would violate State Farm's due process rights and other constitutional guarantees.

For these reasons and those set forth below, Plaintiff's Complaint should be dismissed for failure to state a claim. Where, as here, the claims of the named Plaintiff fail as a matter of law, the putative class action complaint should be dismissed in its entirety. *See*, *e.g.*, *Speier-Roche v. Volkswagen Corp. of Am.*, 2014 WL 1745050, at *1 (S.D. Fla. Apr., 30, 2011).

---

[2]   Insurance policies exclude coverage for such potentially catastrophic hazards as "volcanic eruption," "nuclear hazard," "war," and "flood."  (*See* Policy at 5.)

## II.   LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'sufficient facts to state a claim to relief that is plausible on its face.'" *Milgram v. Chase Bank USA, N.A.*, 2020 WL 409546, at *2 (S.D. Fla. Jan. 25, 2020) (Smith, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court "will not accept any allegations that are merely legal conclusions, nor any bald assertions or unwarranted inferences drawn from the alleged facts." *Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 680 (11th Cir. 2018) (citing *Iqbal*, 556 U.S. at 678); *Topping v. U.S. Dep't of Educ.*, 510 F. App'x 816, 818 (11th Cir. 2013).  In considering this 12(b)(6) motion, the Court may take judicial notice of documents that are referenced in the Complaint and are central to Plaintiff's claims – (1) the Policy and (2) the governmental orders at issue.[3]  *See BPI Sports, LLC v. Thermolife Int'l, LLC*, 2020 U.S. Dist. LEXIS 62662, at *4 (S.D. Fla. Jan. 9, 2020) (Smith, J.).  The governmental orders are also subject to judicial notice because they are matters of public record.  *See Halmos v. Bomadier Aero. Corp.*, 404 F. App'x 376, 377 (11th Cir. 2010).

## III.   PLAINTIFF FAILS TO STATE A CLAIM

### A.   Plaintiff's Breach Of Contract Claim Should Be Dismissed

The interpretation of an insurance contract is a legal issue for the Court.  *Gas Kwick, Inc.*, 58 F.3d at 1538-39.  Under Florida law, it is the Court's duty to construe the policies "according to their plain meaning," *Century Sur. Co. v. Broward Collision, Inc.*, 2014 WL 11761921, at *3 (S.D. Fla. Dec. 19, 2014).  "If the language of a policy is not ambiguous, the Court applies the

---

[3]   True and correct copies of the following governmental orders are attached as exhibits to the Reid Declaration:  Ex. B – Palm Beach County Emergency Oder 2020-002; Ex. C – Palm Beach County Emergency Order 2020-002a; Ex. D – Executive Order 20-89; and Ex. E – Executive Order 20-91.

plain language of the policy to the allegations in the Underlying Complaint." *Evanston Ins. Co.*, 152 F. Supp. 3d at 1374. Courts look at the insurance policy as a whole and "give every provision its full meaning and operative effect." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (Florida law). Courts may not "'rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.'" *Taurus Holdings, Inc. v. U.S. Fidelity & Guaranty Co.*, 913 So. 2d 528, 532 (Fla. 2005) (citation omitted).

To recover under an insurance policy, an insured has the initial burden of establishing coverage under the terms of the policy. *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997) (Florida law). If the insured proves coverage, then to avoid liability the insurer must establish that the loss is within an exclusion. *Id*. If the insurer makes that showing, the burden shifts back to the insured to show that an exception to the exclusion (if any) brings the claim back within coverage. *Id*. Under the plain language of the Policy, Plaintiff's claimed losses (i) do not meet the terms of coverage and (ii) are subject to exclusions, including the Policy's Virus Exclusion. Plaintiff's breach of contract claim thus should be dismissed as a matter of law.

### i.     Coverage For Plaintiff's Alleged Losses Is Barred By The Virus Exclusion

Plaintiff's claims are barred by the Policy's Virus Exclusion, which states:

**SECTION I – EXCLUSIONS**
1. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
…
**j. Fungi, Virus or Bacteria**
…
(2) Virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease; …. (Policy at 5-6 (¶ 1, j (2)).)

The heading for the exclusion conspicuously includes "Virus" in bold type. The Policy's table of contents also separately lists the "Fungi, Virus Or Bacteria" Exclusion. (Policy at 1.)

Plaintiff's Endorsement for "Loss of Income and Extra Expense," under which Plaintiff sues, expressly incorporates Section I of the Policy, which requires a Covered Cause Of Loss in order for there to be coverage. (Endorsement at 1.)[4]  Per the Policy's terms, Covered Cause Of Loss means **both** an "accidental direct physical loss to" property **and** that the loss is not excluded in the Policy's SECTION I – EXCLUSIONS.  (Policy at 4.)  Among other things, the Policy contains the Virus Exclusion.  Since the "Loss of Income and Extra Expense" Endorsement requires a Covered Cause Of Loss (Endorsement at 1), and since there is no Covered Cause Of Loss because (*inter alia*) the Virus Exclusion applies, there is no coverage under the Endorsement.

The Virus Exclusion is unambiguous.  The Florida Supreme Court has given effect to a similarly-worded exclusion in a State Farm policy that barred coverage for pollutants.  *Deni Assocs.*, 711 So. 2d at 1137.  In *Deni*, the Court held that the plain language of the exclusion, which barred coverage for losses "arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants," excluded coverage not only for losses caused by "environmental pollution," but also for losses caused by an ammonia spill inside a building and from the use of insecticide for spraying crops.  *Id.*  A court "cannot place limitations upon the plain language of a policy exclusion simply because we may think it should have been written [another] way."  *Id.* at 1139.  Nor can a court factor in any "expectations" of the insured—no matter how "reasonable" or "popular"—when policy language is clear and unambiguous, as doing so would "be to rewrite the contract and the basis upon which the premiums are charged."  *Id.* at 1140.

Consistent with the guidance in *Deni*, in *Church of the Palms-Presbyterian (U.S.A.), Inc. v. Cincinnati Ins. Co.*, a Florida federal district court considered the effect of a fungus exclusion on claims for mold damage.  404 F. Supp. 2d 1339, 1341 (M.D. Fla. 2005), *aff'd*, 189 F. App'x 932 (11th Cir. 2006).  There, the court granted summary judgment to the insurer, holding that exclusion was unambiguous and that mold fell within the fungus exclusion.  *Id.* at 1342.  Other courts throughout the country have similarly enforced the plain meaning of exclusions like the one

---

[4]   The Endorsement is found on bates-numbered pages 000055-58 of Exhibit A.

at issue here.  For example, in *Mount Vernon Fire Insurance Co. v. Adamson*, an insurer sought a declaratory judgment that it was not required to indemnify a landlord under a commercial insurance policy for a tenant's suit for damages allegedly caused by mold in the apartment.  2010 WL 3937336, at *1 (E.D. Va. Sept. 15, 2010), *adopted*, 2010 WL 3937335 (E.D. Va. Oct. 6, 2010). The policy contained an exclusion barring coverage for "mold, fungus, bacteria or virus."  *Id*. Finding the plain language of the exclusion to be unambiguous, the court held that the insurer had "no coverage obligation."  *Id*. at *6.  Likewise, in *Alexis v. Southwood L.P.*, the court affirmed summary judgment for the insurer, holding that a "communicable disease exclusion" barred coverage for diseases transmitted from exposure to raw sewage.  792 So. 2d 100, 102 (La. Ct. App. 2001).  And in evaluating an insurance claim for flood damage from storm water, the Eleventh Circuit held that coverage was barred by the policy's unambiguous surface water exclusion.  *Williams v. State Farm Fire & Cas. Ins. Co.*, 581 F. App'x 733, 736 (11th Cir. 2014).

Plaintiff alleges it is entitled under the Policy to coverage for losses that occurred "as a result of" "the COVID-19 global pandemic" and subsequent "orders that limited human interaction and required residents to stay at home," to "limit the risk of exposure to COVID-19" caused by a "coronavirus."  (Compl. ¶¶ 3, 5, 15, 17, 20, 34.)  Plaintiff's allegations establish that a virus is in the chain of causation for its alleged losses, which are thus barred by the Policy's Virus Exclusion.

In an attempt to avoid the unambiguous language of the contract, Plaintiff alleges that its loss "was not caused by the presence of SARS-CoV-2, or an outbreak of COV-19 on its premises. Rather, Plaintiff's loss allegedly results directly from social distancing/stay-at-home orders, which have forced Plaintiff to suspend its operations." (Compl. ¶ 41.)  Yet the COVID-19 virus is plainly at the root of these orders.  Since "COVID-19 [is] a respiratory illness caused by a virus that spreads rapidly from person to person and may result in serious illness or death," the Palm Beach County stay-at-home orders were issued "to reduce" and "to slow the spread of the COVID-19 virus."  (Ex. B at 1-2.)  Governor DeSantis's Executive Orders were also undertaken to "slow the spread" and "limit the risk of exposure to COVID-19."  (Ex. E at 1, 3.)  Thus, Plaintiff's allegations only underscore the applicability of the Virus Exclusion.  To this end, the Virus Exclusion applies

to any loss where a virus is anywhere in the chain of causation.  The lead-in language to the Virus Exclusion (and other exclusions) excludes from coverage "any loss which would not have occurred in the absence of one or more of the [listed] excluded events" and provides that State Farm does not "insure for such loss regardless of (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces or occurs as a result of any combination of these."  (Policy at 5-6 (¶ 1, j (2)).)  This "'anti-concurrent causation clause'" bars coverage for losses if virus is "in any sequence" in the chain of causation, even if there are also other causes. *Tuepker v. State Farm Fire & Cas. Co.*, 507 F.3d 346, 351, 354 (5th Cir. 2007); *see also Metro Brokers, Inc. v. Transportation Ins. Co.*, 603 F. App'x 833, 836 (11th Cir. 2015) (under "lead-in" language similar to State Farm's, loss caused by an excluded event is not covered "regardless of any other cause or event that contributes concurrently or in any sequence to the loss").

Just this year, in *United Specialty Insurance Co. v. Davis*, this Court considered an analogous situation involving an insurer's mold exclusion.  2020 WL 1445484, at *4 (S.D. Fla. Feb. 19, 2020) (Smith, J.).  There, the policy at issue "contain[ed] a 'Mold, Fungi, Bacteria, Air Quality, Contaminants, Minerals or Other Harmful Materials Exclusion.'"  *Id.* at *2.  The party seeking coverage argued that unless the policy contained an explicit anti-concurrent causation clause (the "magic language") – such as that in State Farm's Policy – the mold exclusion did not bar coverage for mold when some other covered peril set the loss into motion.  *Id.* at *3.  This Court rejected that argument, holding that even without an explicit anti-concurrent causation clause, the mold exclusion barred coverage for mold-caused damages as long as the alleged injuries "arise out of, are incident to, or have a connection to the mold."  *Id.* at *4.  This reasoning applies with even more force where, as here, the "magic language" of an anti-concurrent causation clause is in the Policy.  Here, Plaintiff's alleged losses "would not have occurred in the absence of" a "virus" and are thus excluded from coverage under the Virus Exclusion.  *See Tuepker*, 507 F.3d at 351, 354; *United*, 2020 WL 1445484 at *4.

7

Yet Plaintiff seeks to have the Court ignore the plain meaning of State Farm's Virus Exclusion and its lead-in language. (Compl. ¶¶ 40-41.) Not only would doing so violate settled principles of Florida law, *see Deni Assocs.*, 711 So. 2d at 1137-39, but the resulting imposition of retroactive liability under State Farm's insurance contracts would also violate the fundamental protections of the United States and Florida Constitutions against denial of due process and taking of property without just compensation.[5] State Farm's contract rights, as well as the funds that Plaintiff claims should be paid by State Farm for losses barred by the Virus Exclusion, are protected property interests for purposes of due process. *See Stidham v. Tex. Comm'n on Private Sec.*, 418 F.3d 486, 492 n.9 (5th Cir. 2005). The retroactive assessment of liability for such uncovered "losses" that State Farm never contracted to provide and for which the policyholders were not charged premiums would unfairly and arbitrarily force State Farm and other insurers to bear the huge costs of a public catastrophe. Policyholders such as Plaintiff had no reasonable expectation of compensation for losses excluded by the Virus Exclusion in their policies, and State Farm had a settled expectation that it was not undertaking to insure such losses. Interpreting insurance policies to cover excluded COVID-19 claims would drain insurers' reserves set aside to cover other policyholders' covered losses. The drastic change in settled Florida law and retroactive creation of liability under State Farm's insurance contracts sought by Plaintiff would violate the basic guarantees of fairness protected by due process. *See Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 733 (1984); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-75 & n.22 (1996).

Such retroactive rewriting of State Farm's policies and imposition on State Farm of a "disproportionate and severely retroactive burden" of liability would also contravene the "fundamental principles of fairness underlying the Takings Clause[s]" of the United States and Florida Constitutions. *See E. Enters. v. Apfel*, 524 U.S. 498, 536-37 (1998) (invalidating legislation that would have imposed far-reaching retroactive liability for health benefits on employers).

---

[5] *See* U.S. CONST., amends. 5, 14; FLA. CONST., art. I § 9 and art. X § 6(a).

For these reasons, the Court should hold that the Policy's Virus Exclusion excludes Plaintiff's claimed losses from coverage.

> ii.     **<u>Even Without The Virus Exclusion, Plaintiff Does Not Allege Covered Losses</u>**

Even without the Virus Exclusion that bars its claims, Plaintiff does not state a claim for coverage for the separate reason that its allegations are insufficient to establish the required "accidental direct physical loss to" property.  (Policy at 3; Endorsement at 1.a., 2.a., 3b.)  Again, for there to be a Covered Cause Of Loss under the Policy, it must ***both*** constitute "accidental direct physical loss to" property ***and*** it must not be excluded.

Plaintiff's conclusory allegation that it has "suffered a direct physical loss to [its] property due to the suspension of [its] business operations from social distancing/stay-at-home orders to stop the transmission of COVID-19" (Compl. ¶ 34) does not identify an "accidental direct physical loss to" property or explain what it is.  Such unsupported assertions "are no more than conclusions" and therefore "are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679; *Milgram*, 2020 WL 409546, at *2.

Even if Plaintiff had alleged that the coronavirus was present at its property (which it has not, *see* Compl. ¶ 41), that would not constitute "accidental direct physical loss."  The requirement that the loss be "physical" is "'widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.'"  *Mama Jo's, Inc. v. Sparta Ins. Co.*, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) (citations omitted); *see also Hartford Ins. Co. v. Miss. Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006); *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002); *Univ. Image Prods., Inc. v. Chubb Corp.*, 703 F. Supp. 2d 705, 711 (E.D. Mich. 2010), *aff'd sub nom. Univ. Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569 (6th Cir. 2012).  In a case analogous to this one, the court applied this rule in rejecting a claim for business interruption losses due to the presence of mold and bacteria in a ventilation system, holding that the

insured had not shown "that it suffered any structural or any other tangible damage to the insured property." *Univ. Image Prods.*, 703 F. Supp. 2d at 710.  So, too, here.

In Florida, examples of direct physical loss include structural damage from hurricane winds, *Somethings Fishy Enterprises., Inc. v. Atl. Cas. Ins. Co.*, 415 F. Supp. 3d 1137, 1142 (S.D. Fla. 2019), sink holes, *Mejia v. Citizens Prop. Ins. Corp.*, 161 So. 3d 576, 578 (Fla. 2d DCA 2014), and fires, *Harris v. U. S. Fid. & Guar. Co.*, 409 So. 2d 1210, 1211 (Fla. 1st DCA 1982).  These cases, all of which involve tangible damage, do not support the notion that a virus, which does not impair the structural integrity of property, constitutes direct physical loss.  "[B]usiness interruption and extra expense losses are covered only if 'resulting from' damage or destruction of real or personal property caused by a covered peril."  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Texpak Group N.V.*, 906 So. 2d 300, 302 (Fla. 3d DCA 2005).

In a Florida case analogous to this one, a restaurant sought insurance coverage for damage allegedly caused by construction debris and dust from adjacent roadwork.  *Mama Jo's*, 2018 WL 3412974, at *1.  The insurer asserted that "Plaintiff's expenses associated with cleaning dust from building surfaces and personal property do not constitute direct physical loss or damage because the dust did not tangibly injure covered property."  *Id.* at *8.  The court agreed with the insurer, holding that the plaintiff's alleged losses did not constitute a "direct physical loss."  *Id.* at *9.  The court further held that even if it were to adopt a more expansive definition of "direct physical loss or damage," the plaintiff would not be entitled to coverage because physical loss coverage is trig-gered "when property becomes 'uninhabitable' or substantially 'unusable.'"  *Id.* (citing *Port Auth. of N.Y. & N.J.*, 311 F.3d at 236).  Where, as here, "the structure continues to function," a property is not "uninhabitable or unusable" and thus does not fall within coverage.  *Id.*

Plaintiff's allegations establish that the insured property is not "uninhabitable or unusable." Plaintiff admits that its business is "operating," even if on an emergency basis.  (Compl. ¶ 5).  What Plaintiff seeks coverage for is not direct physical loss to property, but rather economic damages. Such a request "misconstrues the nature of the business interruption policy," the purpose of which is to "indemnify the insured for loss caused by ***the interruption of a*** going ***business consequent***

10

***upon the destruction of the building, plant, or parts thereof***." *Ramada Inn Ramogreen, Inc. v. Travelers Indem. Co. of Am.*, 835 F.2d 812, 814 (11th Cir. 1988) (Florida law) (emphasis added). "These definitions indicate that recovery is intended when the loss is due to inability to use the premises where the damage occurs." *Id.* Courts throughout the country have likewise held that insurance coverage is unavailable where, as here, the plaintiff has suffered an adverse effect on revenue, rather than physical damage resulting in a suspension of business. For instance, in *National Children's Expositions Corp. v. Anchor Ins. Co.*, 279 F.2d 428 (2d Cir.1960), recovery was denied under the insured's use and occupancy policy for reduction in attendance due to a snow-storm, since its building was open. Likewise, in *Keetch v. Mut. of Enumclaw Ins. Co.*, 831 P.2d 784, 786 (Wash. Ct. App. 1992), recovery was denied under the insured's business interruption policy where a hotel had reduced earnings but remained open after a volcanic eruption that covered the building in ash.

Nor does it suffice that Plaintiff's alleged losses were the result of governmental closure "orders." (*E.g.*, Comp. ¶¶ 3-6, 18-20, 24, 25, 34, 41.) As in *Source Food Technology, Inc. v. U.S. Fidelity & Guaranty Co.*, 465 F.3d 834 (8th Cir. 2006), where there was a loss of use of property due to a governmental embargo order, "the policy's use of the word 'to' in the policy language 'direct physical loss *to* property' is significant." *Id.* at 838 (emphasis in original). Plaintiff's "argument might be stronger if the policy's language included the word 'of' rather than 'to,' as in 'direct physical loss of property' or even 'direct loss of property.' But these phrases are not found in the policy." *Id.* "[T]he policy's use of the words 'to property' further undermines [Plaintiff's] argument" that coverage is triggered under the Policy. *Id.* Accordingly, Plaintiff's breach of contract claim should be dismissed.

### iii.    The Policy's Civil Authority Provision Is Inapplicable

Plaintiff alleges it is entitled to coverage under the Civil Authority provision in an Endorsement to the Policy. (Compl. ¶¶ 33-41). At its beginning and end, the Endorsement states: "The

11

coverage provided by this endorsement is subject to the provisions of **SECTION I — PROP-ERTY**, except as provided below" and "All other policy provisions apply." (Endorsement at 1, 4.) Under the plain terms of the Policy and its Endorsement, Plaintiff has not pled facts that meet the requisite elements to trigger the Civil Authority provision. Those elements include:

> ➤ "When a Covered Cause Of Loss" (Endorsement, ¶ 4 (p. 2)), *i.e.*, "accidental direct physical loss to" property "unless the loss is … [e]xcluded" (Policy, Section I – Covered Causes Of Loss (p. 4));

> ➤ "causes damage to property other than property at the described premises" (Endorsement ¶ 4 (p. 2)); and

> ➤ a "civil authority … prohibits access to the described premises, provided that both of the following apply:" (*id.*);

> ➤ "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area; and" (*id.*);

> ➤ "[t]he action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause Of Loss that caused the damage, or … to enable a civil authority to have unimpeded access to the damaged property." (*Id.*)

The failure of even one of these contractual elements warrants a finding of no coverage. Plaintiff's pleading fails on each of them.

Plaintiff does not allege a legally cognizable "Covered Cause Of Loss." Rather, it affirmatively alleges an excluded cause of loss: the COVID-19 coronavirus. Plaintiff alleges it sustained losses due to the "social distancing and/or stay-at-home orders issued in connection with the COVID-19 global pandemic" caused by the "coronavirus." (Compl. ¶¶ 2, 15.) These orders were issued "to slow the spread of the virus" (*id.* ¶ 17) and to "increase the containment of the virus." (*E.g.*, Palm Beach Cty. Emer. Or. 2020-002, at 2 (Ex. B).) As discussed above, the Policy states: "We do not insure under any coverage for any loss which would not have occurred in the absence of ... Virus." (Policy at 5-6 (¶ 1, j (2).) The Virus Exclusion bars coverage.

Nor does Plaintiff plead a cognizable claim for damage to nearby property—a prerequisite to obtain coverage under the Civil Authority provision. *Dickie Brennan & Co. v. Lexington Ins.*

*Co.*, 636 F.3d 683, 685 (5th Cir. 2011); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarmar, LLP v. Nat'l Fire Ins. Co.*, 2007 WL 2489711, at *3 (M.D. La. Aug. 29, 2007).  Instead, the governmental Orders concern a "public health emergency" caused by the COVID-19 coronavirus. (*E.g.*, Palm Beach Cty. Emer. Or. 2020-002, at 1 (Ex. B); Exec. Or. 20-89, at 1 (Ex. D).)

"[C]ivil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property."  *Dickie Brennan*, 636 F.3d at 686-87; *see United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128, 131 (2d Cir. 2006); *S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*, 2008 WL 450012, at *9 (S.D. Tex. Feb. 15, 2008); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, 2004 WL 5704715, at *6-7 (N.D. Ga. Dec. 15, 2004).  For example, coverage might apply where a civil authority orders an insured building closed for safety reasons while an adjacent building that was damaged by fire is being repaired. *See Syufy Enters. v. Home Ins. Co.*, 1995 WL 129229, at *2 n.1 (N.D. Cal. Mar. 21, 1995); *United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F. Supp. 2d 343, 352 (S.D.N.Y. 2005), *aff'd*, 439 F.3d 128 (2d Cir. 2006).  A "causal link" must exist between prior actual damage to nearby premises "and the action by a civil authority."  *S. Tex. Med. Clinics*, 2008 WL 450012, at *10; *see Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.,* 2020 WL 886120, at *6 (D.S.C. Feb. 24, 2020); *Not Home Alone, Inc. v. Phila. Indem. Ins. Co.*, 2011 WL 13214381 at *6 (E.D. Tex. Mar. 30), *adopted,* 2011 WL 13217067 (E.D. Tex. Apr. 8, 2011).  No such situation is alleged here.

Plaintiff fails to plead the requisite causal link between actual damage to nearby premises and the prohibition on access.  None of the orders precludes access to the insured premises because of alleged damage to other property within the area of the insured premises.  Rather, access to Plaintiff's premises is expressly permitted.  Plaintiff conducts eye examinations and sells prescription eyewear.  (Compl. ¶¶ 23-24).  "[E]ye care centers" are deemed "critical" and "may remain open" under the governmental orders.  (Palm Beach Cty. Emer. Or. 2020-002, at 4-5 (Ex. B).)  As Plaintiff acknowledges, it is "open[] for business by appointment ... to fix damaged prescription eyewear and conduct emergency vision consultations."  (Compl. ¶ 24.)

A causal relationship is also absent when civil action is taken due to fear of future harm, rather than prior actual physical damage.  Thus, when construing similar policy language, courts have rejected civil authority coverage where businesses had losses due to preventive governmental measures, such as pre-hurricane evacuations or the threat of terrorist attacks, before any physical damage occurred.  *See Dickie Brennan*, 636 F.3d at 686–87; *S. Tex. Med. Clinics*, 2008 WL 450012, at *10; *Not Home Alone, Inc.*, 2011 WL 13214381, at *6-7; *United Air Lines*, 439 F.3d at 134-35; *Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*, 2010 WL 4026375, at *3 (E.D. La. Oct. 12, 2010).  Here, because the governmental orders were issued "to slow the spread of the COVID-19 virus" (Palm Beach Cty. Emer. Or. 2020-002a, at 3 (Ex. C); *see* Exec. Or. 20-91, at 2 (Ex. E)), and not because of prior actual "physical damage," "no coverage" exists for "loss of revenue because of business interruption."  *Dickie Brennan*, 636 F.3d at 687.

Moreover, the provision has additional requirements, including that "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage," where the described premises are within that area.  (Endorsement ¶ 4.a(1).)  Plaintiff does not so allege.  In fact, "[a]ccess to the area immediately surrounding the damaged property" is not "prohibited."  Beyond the lack of physical barricades, the governmental orders allow access to hospitals, clinics, laboratories, vehicle manufacturers, automotive suppliers, gas stations, grocery stores, moving and relocation services, hotels, and laundromats, among others.  (*E.g.*, Palm Beach Cty. Emer. Or. 2020-002a, at 4-10) (Ex. C).).  The orders allow "the continuing operation of critical businesses," which "may remain open."  (*Id.* at 4.)  And even "noncritical retail and commercial business locations" may be accessed "to perform Minimum Basic Operations," such as to "maintain the value of inventory, preserve plant and equipment condition ... [and] ensure security."  (*Id.*)  In short, Plaintiff has failed to allege the factual predicates for coverage under the Civil Authority provision.  Its claim for breach of that provision fails as a matter of law.

### iv. <u>The Policy's "Loss of Income" Coverage Is Inapplicable</u>

Plaintiff alleges it is entitled to coverage under the Loss of Income Coverage provided by the Endorsement.  (Compl. ¶ 6.)  Beyond being barred by the Virus Exclusion, Plaintiff is not entitled to Loss of Income coverage because it does not meet conditions for coverage.  Such coverage is provided for a suspension of operations caused by "accidental direct physical loss to property."  (Endorsement at 1.)  But as shown above, Plaintiff's allegations are insufficient to constitute "accidental direct physical loss to property."  *See* Point III.A.ii, *supra.*

Under Plaintiff's allegations, the other requirements for "Loss of Income" coverage are also not satisfied.  Not only does the Policy provide that State Farm "do[es] not insure ***under any coverage*** for any loss which would not have occurred in the absence of … Virus" (Policy at 5-6 (emphasis added)), but the Loss of Income provision also expressly requires that the loss "must be caused by a Covered Cause Of Loss."  (Endorsement at 1.)  Under the plain terms of the Policy, a virus is not a "Covered Cause Of Loss."  (Policy at 4, 6.)

Further, to the extent that Plaintiff's suspension of business was caused by the governmental orders, it is not a covered loss.  Those orders are not, and did not cause, the required "accidental direct physical loss to property."  Moreover, under the Policy's "Acts or Decisions" Exclusion, "[c]onduct, acts or decisions … by a governmental body" do not constitute a covered loss, and if such acts and decisions "cause," "contribute to," or "aggravate" an excluded loss (such as virus), the loss remains excluded.  (Policy at 8); *see also* Point III.A.v, *infra.*

Loss of Income coverage applies to loss of income sustained due to the necessary suspension of operations "during the 'period of restoration,'" the period when the property is "repaired, rebuilt or replaced with reasonable speed and similar quality" or until "business is resumed at a new permanent location."  (Endorsement at 1, 4.)  Here, there is no period of restoration.  There are no allegations that the coronavirus necessitated repairs, replacement, or rebuilding, or that new permanent locations are being sought.  Loss of income coverage is not available for a suspension of operations where, as here, a shutdown is due to government order.

### v.     Additional Policy Exclusions Bar Plaintiff's Claims

Despite Plaintiff's pleading of legal conclusions (Compl. ¶¶ 36-39), which are entitled to no weight on a motion to dismiss, *see Avena*, 740 F. App'x at 680, coverage is also barred by the "Ordinance or Law," the "Acts or Decisions," and the "Consequential Loss" Exclusions.  Each of these Exclusions takes the loss at issue outside the Policy's definition of Covered Cause Of Loss and precludes coverage.

The "Ordinance or Law" Exclusion bars coverage for any loss due to "[t]he enforcement of any ordinance or law" "[r]egulating the ... use ... of any property," and "applies … even if the property has not been damaged." (Policy, Exclusions ¶ 1.a (p. 5).)  Under such an exclusion, "costs ... incurred due to the enforcement" of certain restrictions imposed by governmental officials on the "use" of property are "excluded."  *Bahama Bay II Condo. Ass'n, Inc. v. United Nat'l Ins. Co.*, 374 F. Supp. 3d 1274, 1281–82 (M.D. Fla. 2019); *see also MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1192 (10th Cir. 2009).

The "Acts or Decisions" Exclusion bars coverage for any loss caused by "[c]onduct, acts or decisions … of any person, group, organization, or governmental body whether intentional, wrongful, negligent or without fault." (Policy, Exclusions ¶ 3.b (p. 8).)  Thus, where a claimed loss is caused by the acts or decisions of a governmental authority, the loss is excluded from coverage.  For example, in *Cytopath Biopsy Lab., Inc. v. U.S. Fidelity & Guaranty Co.*, 774 N.Y.S.2d 710 (App. Div. 2004), the "Acts or Decisions" exclusion in the plaintiff's policy barred coverage for alleged business interruption losses because "the real losses claimed herein resulted from refusal by the [governmental] authorities to permit resumption of operations until proper permits were obtained and a more acceptable ventilation system was installed."  *Id.* at 711; *see also Worldwide Sorbent Prod., Inc. v. Invensys Sys., Inc.*, 2014 WL 12597394, at *11 (E.D. Tex. July 31, 2014) (applying Acts or Decisions exclusion); *Landmark Hosp., LLC v. Cont'l Cas., Co.*, 2002 WL 34404929, at *2 (C.D. Cal. July 2, 2002) (same).

Here, because acts by governmental officials allegedly caused Plaintiff's losses by putting restrictions on the use of Plaintiff's property (Compl. ¶¶ 3-6, 16-25, 34, 41), the Ordinance or Law

Exclusion and the Acts or Decisions Exclusion are each implicated.  Either one of these exclusions bars coverage.[6]

Additionally, the "Consequential Loss" Exclusion bars coverage for "loss whether consisting of, or directly and immediately caused by … [d]elay, loss of use or loss of market."  (Policy, Exclusions ¶ 2.b (p. 6).)  The Loss of Income and Extra Expense endorsement also excludes "any other consequential loss."  (Endorsement, Exclusions, ¶ 2 (p. 3).)  Courts have upheld similar consequential loss exclusions where an insured alleged that "its damages were caused by its inability to access" its property and "did not contend that its [property] had been physically damaged in any way."  *Petroterminal de Panama, S.A. v. Houston Cas. Co.*, 114 F. Supp. 3d 152, 160 (S.D.N.Y. 2015), *aff'd*, 659 F. App'x 46 (2d Cir. 2016).  Plaintiff alleges that it sustained "loss of revenue" (*i.e.*, lost profits) due to its reduction in normal operations due to the "social distancing/stay-at-home orders."  (Compl. ¶ 24.)  Such claims are consequential losses barred by the Policy's exclusion for loss caused by loss of use.  *See Petroterminal de Panama, S.A. v. Houston Cas. Co.,* 659 F. App'x 46, 51 (2d Cir. 2016).

### vi.    Plaintiff Lacks Standing As To State Farm Mutual Automobile Ins. Co.

Plaintiff's Policy was issued by State Farm Florida Insurance Company ("State Farm Florida"), a Florida company that "writes property insurance in the State of Florida."  (*See* Compl. ¶ 14.)  State Farm Mutual Automobile Insurance Company ("State Farm Mutual") is a separate legal entity organized under the laws of Illinois and headquartered there.  (*Id.* ¶¶ 13-14.)  As Plaintiff's Policy makes clear, State Farm Mutual is not a party to the insurance contract.  (Policy at 3; Renewal Declaration at 1.)  The fact that State Farm Mutual and State Farm Florida are parent and subsidiary does not give Plaintiff any right to sue State Farm Mutual under Plaintiff's contract with State Farm Florida.[7]  Plaintiff merely alleges that "[t]he policy was prepared by Defendant State

---

[6]   To the extent that Plaintiff contends that governmental officials' acts resulted in the "seizure" of Plaintiff's property, the Governmental Action exclusion would also bar Plaintiff's claims. (Policy, Exclusions ¶ 1.d (p. 5).)

[7]   The fact that State Farm Florida "is a wholly-owned subsidiary of [State Farm Mutual] … does not make the two corporations interchangeable for purposes of bringing or defending a lawsuit."

Farm Mutual Automobile Insurance Company and includes standard forms for Businessowners Coverage and Loss of Income and Extra Expense Coverage, among other things." (Compl. ¶ 26.) Yet that allegation does not establish a contractual relationship, as a matter of law. Thus, Plaintiff has no standing to maintain a breach of contract claim or other claim against State Farm Mutual. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1378 (11th Cir. 1997) ("Employer Plaintiffs … lack standing to maintain a cause of action for breach of contract" because they "are not parties to" "[t]he insurance policies in this case").

For these reasons, Plaintiff's breach of contract claim should be dismissed.

**B.      The Putative Nationwide Class Allegations in the Complaint Should Be Dismissed**

"[I]t is well settled that prior to the certification of a class … the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). "[J]ust as a plaintiff cannot pursue an individual claim unless he proves standing, a plaintiff cannot represent a class unless he has standing to raise the claims of the class he seeks to represent." *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1288 (11th Cir. 2001). "'In other words, Article III standing of a named plaintiff must be established on a claim-by-claim basis within the Eleventh Circuit, and deferring the standing determination to the class certification stage will yield no different result.'" *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1221 (S.D. Fla. 2017) (citation omitted). Moreover, "[a]s standing is a threshold issue, addressing the issue of standing at the motion to dismiss phase of the litigation, rather than waiting for the class certification phase, is not premature." *Sanchez-Knutson v. Ford Motor Co.*, 2015 WL 11197772, at *3 (S.D. Fla. July 22, 2015).

In this case, because Plaintiff itself lacks standing to assert claims against State Farm Mutual (*see* Point A.vi *supra*), Plaintiff has no standing to assert the claims of the putative out-of-state class members who allegedly purchased business interruption insurance from State Farm Mutual

---

*Am. Int'l Grp., Inc. v. Cornerstone Bus., Inc.*, 872 So. 2d 333, 336 (Fla. 2d DCA 2004). "As a separate legal entity, a parent corporation is not liable" on claims against its subsidiary. *Id.*

in other states and allegedly sustained losses and made insurance claims in other states.[8]  Simply put, "[s]ince Plaintiff lacks standing to bring the asserted claims on his own behalf, he also lacks standing to represent a class asserting such claims." *Atkinson v. Wal-Mart Stores, Inc.*, 2009 WL 1458020, at *4 (M.D. Fla. May 26, 2009).  Thus, the nationwide class allegations should be dismissed because Plaintiff lacks standing to represent that proposed class.  *See Prado-Steiman*, 221 F.3d at 1280; *Wooden*, 247 F.3d at 1288.

Notably, in an analogous context, many federal district court decisions in Florida have held that a named plaintiff lacks standing to represent a putative class that includes persons who bought a different product than the named plaintiff, even if that product was purchased from the same company.  These decisions have granted defendants' motions to dismiss such putative class claims at the pleadings stage because of the named plaintiff's lack of standing to assert those claims.[9]  Here, Plaintiff lacks standing to represent the putative nationwide class of persons who allegedly bought insurance policies from, and are in a contractual relationship with, an entirely separate corporate entity.  *See Am. Int'l Grp., Inc.*, 872 So. 2d at 336; *see also* n.7 *supra*.[10]  Accordingly,

---

[8]   In fact, State Farm Mutual does not sell commercial insurance policies and, thus, could never be an appropriate defendant in this case.

[9]   As Judge Rosenberg of this District stated, "in the Eleventh Circuit, a named plaintiff in a consumer class action cannot raise claims relating to products which she herself did not purchase" and lacks standing to assert such claims.  *Bohlke v. Shearer's Foods, LLC*, 2015 WL 249418, at *4 (S.D. Fla. Jan. 20, 2015); *accord, e.g.*, *Snyder v. Green Roads of Fla., LLC*, 2020 WL 42239, at *3 (S.D. Fla. Jan. 3, 2020) (Ungaro, J.); *Blobner v. R.T.G. Furniture Corp.*, 2019 WL 3808130, at *2-4 (M.D. Fla. June 24, 2019) (Moody, J.) (citing cases); *Varner v. Domestic Corp.*, 2017 WL 3730618, at *6 (S.D. Fla. Feb. 7, 2017) (Scola, J.); *Leon*, 301 F. Supp. 3d at 1221 (Williams, J.); *Sanchez-Knutson*, 2015 WL 11197772, at *2 (Dimitrouleas, J.); *Decerbo v. Melitta USA Inc.*, 2016 WL 7206244, at *1  (M.D. Fla. Oct. 17, 2016) (Kovachevich, J.); *Holliday v. Albion Labs., Inc.*, 2015 WL 10857479, at *5 (S.D. Fla. June 9, 2015) (Middlebrooks, J.); *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015) (Cooke, J.); *Barron v. Snyder's-Lance, Inc.*, 2015 WL 11182066, at *17 (S.D. Fla. Mar. 20, 2015) (Leonard, J.); *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1394 (S.D. Fla. 2014) (Hack, J.); *Toback v. GNC Holdings, Inc.*, 2013 WL 5206103, at *5 (S.D. Fla. Sept. 13, 2013) (Cohn, J.).

[10] For the avoidance of doubt, Defendants intend fully to preserve, and do not intend to waive in any manner, any and all arguments based on the lack of general or specific personal jurisdiction concerning the claims of putative out-of-state class members under *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), or as a matter of due process.  *See Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 251 (5th Cir. 2020) (citing *In re Checking Account Overdraft Litig.*,

the nationwide class allegations in the Complaint should be dismissed.

**C.**   **Plaintiff's Declaratory Judgment Claim Should Be Dismissed**

Plaintiff seeks a declaratory judgment that State Farm "breached [its] contractual obligations to Plaintiff" and "is obligated to pay Plaintiff for the full amount of [its alleged] business interruption losses and extra expenses incurred …." (Compl. ¶ 66(b); Prayer for Relief, ¶ B.) Yet as this Court has aptly stated, in language equally applicable here, Plaintiff's breach of contract claim renders its declaratory relief claim redundant.

> The issues raised in Plaintiff's declaratory relief count will necessarily be resolved upon adjudication of the breach of contract count—that is, whether Defendant breached the terms of the Policy by failing to pay the total amount of damages that Plaintiff alleges it is entitled to. Plaintiff can obtain full, adequate, and complete relief through its breach of contract claim, rendering its petition for declaratory relief redundant.

*Tamiami Condo. Warehouse Plaza Ass'n, Inc. v. Markel Am. Ins. Co.*, 2019 WL 4863378, at *3 (S.D. Fla. Oct. 2, 2019) (Smith, J.). Thus, because "Plaintiff's declaratory relief claim is subsumed within its breach of contract claim," the declaratory relief claim should be dismissed. *Id.*

## IV.   CONCLUSION

For the foregoing reasons, State Farm respectfully requests the Court to grant its motion to dismiss Plaintiff's Class Action Complaint for failure to state a claim.

---

780 F.3d 1031, 1037 (11th Cir. 2015)); *Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 295 (D.C. Cir. 2020) (citing *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1245 (11th Cir. 2006)).

Respectfully submitted,

*/s/ D. Matthew Allen*

OF COUNSEL:
DOUGLAS W. DUNHAM
BERT L. WOLFF

DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY  10036
(212) 698-3500 (Telephone)
(212) 698-3599 (Fax)
douglas.dunham@dechert.com
bert.wolff@dechert.com

Benjamine Reid
Florida Bar Number 183522
CARLTON FIELDS, P.A.
Miami Tower
100 S.E. Second Street, Suite 4200
Miami, Florida 33131-2113
Telephone: (305) 539-7222
Facsimile: (305) 530-0055
Email: breid@carltonfields.com

D. Matthew Allen
Florida Bar No. 866326
CARLTON FIELDS, P.A.
4221 West Boy Scout Blvd., Suite 1000
Tampa, Florida 33607
Telephone No. (813) 223-7000
Facsimile No. (813) 229-4133
Email: mallen@carltonfields.com

**ATTORNEYS FOR DEFENDANT**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 11, 2020, I caused a true and correct copy of the foregoing to be filed on the Court's CM/ECF system, which served notice on all counsel of record.

<u>*/s/ D. Matthew Allen*</u>