## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

### CASE NO. 20-80749-CIV-CANNON/Brannon

**ROYAL PALM OPTICAL, INC.,**

     Plaintiff,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** and **STATE FARM FLORIDA INSURANCE COMPANY**,

     Defendants.

_____/

### <u>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS</u>

**THIS CAUSE** came before the Court upon Defendants' Motion to Dismiss Plaintiff's First Amended Class Action Complaint ("Motion") [ECF No. 33]. The Court has considered the Motion, Plaintiff's Response in Opposition [ECF No. 36], Defendant's Reply [ECF No. 37], the supplemental authorities filed by the parties and the responses thereto [ECF Nos. 38-49, 51-52, 54, 56-58, 60-62, 76-77], the full record, and is otherwise fully advised in the premises. The Court also held a hearing on the Motion [ECF No. 75]. For the reasons set forth below, Defendants' Motion to Dismiss Plaintiff's First Amended Class Action Complaint [ECF No. 33] is **GRANTED**.

### I.   Background

According to the First Amended Class Action Complaint, Plaintiff entered into a contract with Defendants State Farm Florida Insurance Company and State Farm Mutual Automobile Insurance Company ("Defendants") to insure Plaintiff's business under an "all risk" policy bearing 98-QC-5216-7 ("Policy") [ECF No. 25 ¶ 3; *see* ECF No. 33-2]. Plaintiff owns and operates Royal Palm Optical Inc., a provider of prescription eyewear and sunglasses [ECF No. 25 ¶ 2]. Between March and April 2020, Plaintiff reduced its normal operations due to state and local government

CASE NO. 20-80749-CIV-CANNON/Brannon

orders ("Orders) that imposed restrictions[1] to slow the spread of COVID-19 [ECF No. 25 ¶¶ 51, 54-63]. Plaintiff alleges that it suffered at least $100,000 in lost revenue during this period [ECF No. 25 ¶¶ 61-62].

On April 21, 2020, Plaintiff filed a claim with Defendants for reimbursement of loss of income [ECF No. ¶¶ 25-2]. That same day, Defendants denied the claim, stating that the Policy did not provide coverage for loss of income due to mandatory shutdowns [ECF No. 25-2, p. 1]. The denial letter explained:

> [T]here is no coverage for the loss of income from the result of a mandatory shutdown due to the COVID-19 (Coronavirus). In order for there to be coverage under the CMP-4522.1 Loss of Income and Extra Expense endorsement, there needs to be a covered cause of loss insured under the CMP-4100 Businessowners Coverage Form Policy. Losses resulting from our caused by COVID-19 (Coronavirus are excluded under the policy. Therefore, in the absence of a covered cause off loss, coverage for loss of income would not apply.

[ECF No. 25-2, p. 1].

On May 5, 2020, Plaintiff filed this action on behalf of itself and all members of a proposed "nationwide class" and "Florida class" of similarly situated business owners as to whom Defendants denied coverage for losses resulting from COVID-19 lockdown orders [ECF No. 1 ¶ 1]. Plaintiff thereafter amended its complaint, raising two counts: Declaratory Judgment (Count 1) and Breach of Contract (Count 2) [ECF No. 25 ¶¶ 138-158]. In Count 1, Plaintiff seeks a declaratory judgment that it is entitled to Loss of Income Coverage because it sustained an actual loss of income due to business closures, and that no coverage exclusions or limitations apply to exclude or limit coverage [ECF No. 25 ¶ 145]. In Count 2, Plaintiff alleges that Defendants breached their coverage obligations under the Policy by denying coverage for business income losses and extra expenses incurred by Plaintiff [ECF No. 25 ¶¶ 156-157].

---

[1] Plaintiff references Palm Beach County Emergency Orders Nos. 2020-002 and 2020-002a, and Florida Governor's Executive Order Nos. 20-89 and 20-91 [ECF No. 25 ¶¶ 49-50].

Defendants thereafter moved to dismiss the First Amended Complaint as to both counts [ECF No. 33], raising the following primary arguments.

First, Defendants argue that Plaintiff's claims are barred by the Policy's Virus Exclusion [ECF No. 33, p. 5], which excludes from coverage any covered loss that is caused by a "Virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease" [ECF No. 33-2, p. 74].

Second, relying on *Mama Jo's Inc. v. Sparta Ins. Co*., 823 F. App'x 868 (11th Cir. 2020), and other authorities, Defendants argue that, even without the Virus Exclusion (or any other exclusion), Plaintiff is barred from recovery as a threshold matter because Plaintiff's allegations do not arise from an "accidental direct physical loss to Covered Property" [ECF No. 33- 2, pp. 71- 72]—a prerequisite to coverage in the Policy [ECF No. 33, pp. 12-16]. This is the most critical part of the Policy because it describes what event triggers the remainder of the Policy.

Third, Defendants rely on three additional exclusions in the Policy, including (1) the "Ordinance or Law" exclusion, which bars coverage for any covered loss due to "[t]he enforcement of any ordinance or law regulating the … use of any property," "even if the property has not been damaged" [ECF No. 33-2, p. 73]; (2) the "Acts or Decisions" exclusion, which bars coverage where the loss is caused by "conduct, acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body whether intentional, wrongful, negligent or without fault"  [ECF No. 33-2, p. 76]; and (3) the "Consequential Losses" exclusion, which bars coverage for "any loss whether consisting of or caused by … delay, loss of use or loss of market" [ECF No. 33-2, p. 74].

Finally, Defendants argue that Plaintiff is not entitled to Loss of Income Coverage or Extra Expense Coverage provided by the Endorsement to the Policy, as those types of coverage do not

get triggered absent an "accidental direct physical loss to Covered property"—which has not happened here [ECF No. 33, pp. 19-20; ECF No. 33-2, p. 55].

Plaintiff responds to Defendant's position as follows.

First, with respect to the threshold coverage question whether the claimed loss qualifies as an "accidental direct physical loss to Covered Property," Plaintiff observes that (1) such language is not further defined in the Policy; (2) if "State Farm wanted to limit its liability to direct physical loss that required structural damage to property, it was required to do so as the drafter of the Policy" and (3) any residual ambiguity in those terms must be construed against State Farm [ECF No. 36, pp. 8-9]. Plaintiff cites as support the decision in *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-CV-265, 2020 WL 7249624 (E.D. Va. Dec. 9, 2020), where the District Court for the Eastern District of Virginia held, on a Rule 12(b)(6) motion, that the term "direct physical loss to property" was sufficiently ambiguous under Virginia law such that plaintiff plausibly experienced a covered loss when its property became inaccessible following COVID-19 executive orders. *Id.* at **7-10 & n.4 (noting the state-specific nature of its analysis). Plaintiff also relies on *Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co., Ltd.*, No. 620CV1174ORL22EJK, 2020 WL 5939172 (M.D. Fla. Sept. 24, 2020), where the court denied an insurer's motion to dismiss because the policy documents were not in the record, and the Eleventh Circuit had not issued any binding authority in the context of COVID-19 specifically. *Id.* at *4.

Second, as to the Policy's Virus Exclusion, Plaintiff says it does not apply because Plaintiff's losses "arise from the Orders—not [from] a virus" [ECF No. 36, p. 14], and because the most natural meaning of the Virus Exclusion is that it applies to viruses that affect the physical property itself, like dry rot or fungi, not airborne viruses like COVID-19 [ECF No. 36, p. 14-15].

Third, Plaintiff adds that none of the other exclusions on which Defendant relies applies in this case (referring to the exclusions for Ordinance or Law, Acts or Decisions, and Consequential

Loss).  For instance, Plaintiff states that the COVID-19 Executive Orders are not "ordinances or laws," but rather executive actions devoid of enforcement and thus not "laws" within the meaning of the Exclusion [ECF No. 36, pp. 20-21].  Plaintiff likewise argues that an exclusion based on the conduct, acts, or decisions of a governmental official should not apply because it would constitute an overly broad exclusion that would swallow the entire Policy [ECF No. 36, pp. 21-22].  Additionally, Plaintiff argues that the "consequential loss" exclusion does not apply because it is designed to exclude damages "not directly attributable to a covered cause of loss," whereas Plaintiff's claims for loss of income are indeed a covered loss [ECF No. 33, p. 30].

In Reply, Defendants reassert the absence of an "accidental direct physical loss to Covered Property" and the applicability of various exclusions in the Policy [ECF No. 37, p. 2].

## II.   Legal Standards

### A.  Rule 12(b)(6) Standard

A court may dismiss a complaint for failing to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  This requirement "give[s] the Defendants fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and alterations omitted).  The court takes the plaintiff's factual allegations as true and construes them in the light most favorable to the plaintiff. *See, e.g.*, *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

A complaint must contain enough facts to plausibly allege the required elements. *See, e.g.*, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295–96 (11th Cir. 2007).  A pleading that offers "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

### B. Insurance Contract Interpretation under Florida Law

In determining coverage under an insurance policy, courts look at the policy in its entirety and are required to give "every provision its full meaning and operative effect." *See State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (internal quotation marks omitted). Thus, when construing a policy's terms, "the pertinent provisions should be read *in pari materia*." *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007) (internal quotation marks omitted). "[I]nsurance contracts are construed according to their plain meaning." *Garcia v. Federal Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (internal quotation marks omitted); *see also Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002) ("[The] terms of an insurance policy should be taken and understood in their ordinary sense[,] and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties." (internal quotation marks omitted)). The unambiguous language of the policy is controlling; however, where the language is "susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered ambiguous, and must be interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." *Steinberg*, 393 F.3d at 1230 (internal quotation marks omitted).

"Under Florida law, an insured seeking to recover under an all-risks policy . . . bears the burden of proving that a covered loss occurred at the insured property." *Berkower v. USAA Cas. Ins. Co.*, No. 15-23947-CIV, 2017 WL 1250419, at *7 (S.D. Fla. Apr. 4, 2017). Accordingly, the burden is on the insured to prove facts that bring its claim within an insurance policy's affirmative grant of coverage. *Id.* With respect to exclusions more specifically, the burden falls on the insurer

CASE NO. 20-80749-CIV-CANNON/Brannon

to prove that an exclusionary clause precludes coverage, and exclusions are construed narrowly. *See, e.g.*, *U.S. Concrete Pipe Co. v. Bould*, 437 So. 2d 1061, 1065 (Fla. 1983); *Evanston Ins. Co. v. Budget Grp. Inc.*, 199 F. App'x 867, 868 (11th Cir. 2006) (citing *Demshar v. AAACon Auto Transport, Inc.*, 337 So. 2d 963, 965 (Fla. 1976)); *Hartnett v. Southern Ins. Co.*, 181 So. 2d 524, 528 (Fla. 1965).

## III.    Discussion

Under Section CMP-4100 of the coverage form, the Policy provides coverage as follows: "We insure for accidental direct physical loss to Covered Property unless the loss is: 1. Excluded in SECTION I – EXCLUSIONS; or 2. Limited in the Property Subject to Limitations provision" [ECF No. 33-2, p. 72].[2]  The covered property, as listed in the declaration pages of the Policy, is 17940 N. Military Trail, #400, Boca Raton, Florida 33496 [ECF No. 33- 2, p. 5].  The policy provides additional coverage for "loss of income" [ECF No. 33-2, p. 55], and "extra expense" incurred during a "period of restoration that . . . would not have incurred if there had been no accidental direct physical loss to property at described premises" [ECF No. 33- 2, pp. 55-56]. None of these additional avenues of coverage kick in, however, unless the claimed loss itself qualifies as a "covered loss" to begin with, and that again requires "accidental direct physical loss to Covered Property."  Thus, the requirement of "accidental direct physical loss to Covered Property" is the baseline in the Policy without which coverage does not apply [ECF No. 33- 2, p. 72].

The premise of Plaintiff's threshold coverage argument is that, although the property itself did not suffer actual physical damage, Plaintiff still has suffered "accidental direct physical loss to

---

[2] The Court may consider the policy documents without converting Defendants' motion into a motion for summary judgment because the policies are central to Plaintiff's complaint, and no party questions their authenticity. *See, e.g.*, *Basson v. Mortg. Elec. Registration Sys.*, Inc., 741 F. App'x 770, 771 (11th Cir. 2018) (per curiam).

Covered Property," because it was not able to use the property for its intended use or to gain access to the property as a result of COVID-19 and subsequent shutdown orders—thereby causing significant economic losses to its business [ECF No. 36 pp. 3, 12- 13].  Plaintiff's reading does not accord with the plain language of the Policy's coverage provision.

The critical policy language at issue here—"accidental direct physical loss to Covered Property"—requires some form of actual, tangible damage to the physical property itself to trigger the Policy's affirmative grant of coverage.  This is borne out by the ordinary meaning of those terms as understood in context.

We start with the noun "loss."  The dictionary definitions of the word "loss" include specific words like "destruction," "ruin," and "deprivation," as well as more general references to concepts like "decrease in amount, magnitude, or degree," "the amount of something lost," and "the amount of an insured's financial detriment by death or damage that the insurer is liable for."[3] Standing alone, the term "loss" is thus arguably broad, except that here it is preceded by two meaningful modifiers that force a much tighter natural meaning: "physical" and "direct." "Physical" means "material"—i.e., that it "relat[es] to or [is] composed of matter"[4]—and "material," in turn, signifies "tangible" or "palpable"—i.e., that it is capable of being perceived by

---

[3] *See* Merriam-Webster's Collegiate Dictionary, 736 (11th ed. 2020); The American Heritage Dictionary of the English Language, 1037 (5th ed. 2018); Merriam-Webster's Collegiate Thesaurus, 652 (2d ed. 2018) (providing as synonyms for "loss" the "related words" of "deprivation," "dispossession," and "privation," among others, and defining "loss" as "a person or thing harmed, lost, or destroyed," "the amount by which something is lessened – see DECREASE," and "the state or fact of being rendered nonexistent, physically unsound, or useless—see DESTRUCTION").

[4] American Heritage Dictionary of the English Language, 1331 (5th ed. 2018) (defining "physical," in relevant part, as "of or relating to material things"); Merriam-Webster's Collegiate Dictionary, 935 (11th ed. 2020) (same); Merriam-Webster's Collegiate Thesaurus, 794 (2d ed. 2018).

the senses, especially by the sense of touch.[5]  To that we add the word "direct," which eliminates any break between the "physical loss" and the "Covered Property"—thereby making the "physical loss" run straight to the Covered Property, without an intervening or deviating influence.[6]  This harm directed at the premises itself is confirmed by the Policy's use of the preposition "*to* Covered Property"—as distinct from something more attenuated like "*related to*" or "*arising from*."  The modifier "to" thus further indicates that it is the physical premises itself that must receive the "direct physical loss."[7]

Read in context, the textual combination of the Policy's affirmative grant of coverage— "direct physical loss to Covered Property"—unambiguously requires actual tangible damage to the physical premises itself, not merely a claim that the property as a business has suffered adverse economic consequences or impact related to use of the property.

This textual analysis is consistent with the Eleventh Circuit's decision in *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868 (11th Cir. 2020), which provides pertinent guidance and supports the Court's determination.  In *Mama Jo's*, the Eleventh Circuit affirmed the district

---

[5] Merriam-Webster's Collegiate Dictionary, 765 (11th ed. 2020) (defining "material," inter alia, as "relating to or concerned with physical rather than spiritual or intellectual things" and "having the tangible qualities of a body such as shape, size, or resistance to force"); *id.* at 1276 (defining "tangible" as "capable of being perceived esp. by the sense of touch: PALPABLE" and "substantially real: MATERIAL").

[6] Merriam-Webster's Collegiate Dictionary, 353 (11th ed. 2020) (defining the adjective "direct" as, *inter alia*, "being or passing in a straight line," "having no compromising or impairing element," "proceeding from one point to another in time or space without deviation or interruption," and "marked by absence of an intervening agency, instrumentality, or influence"); Merriam-Webster's Collegiate Thesaurus, 304 (2d ed. 2018) (defining "direct" as "in a direct line or course").

[7] Merriam-Webster's Collegiate Dictionary, 1313 (11th ed. 2020) (explaining that "to," when used as a function word, "indicates the receiver of an action or the one for which something is done or exists," often to indicate "exclusiveness or separateness"); American Heritage Dictionary of the English Language, 1827 (5th ed. 2018) (defining "to" as "in a direction toward so as to reach," "toward," "in contact with," "in front of, and also "in one direction," among other definitions).

court's conclusion that a restaurant failed to establish that it suffered a direct physical loss that would trigger coverage under an insurance policy. The restaurant claimed a loss after nearby roadway construction blew dust and debris inside its facility, causing an economic loss due to decreased customer traffic and imposing cleaning expenses on the restaurant. The insurer denied the claim after concluding that the restaurant did not suffer a "direct physical loss or damage" to the insured property, and the district court thereafter entered summary judgment in favor of the insured. On appeal, the Eleventh Circuit affirmed, applying Florida law. The Court noted that "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Id.* at 879 (citing *Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 3d 1067, 1069 (Fla. Dist. Ct. App. 2020); *Vazquez v. Citizens Prop. Ins. Corp.*, 304 So. 3d 1280, 1284 (Fla. Dist. Ct. App. 2020); *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012) ("[C]leaning . . . expenses . . . are not tangible, physical losses, but economic losses."); *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (Cal. Ct. App. 2010) ("A direct physical loss 'contemplates an actual change in insured property."); *AFLAC Inc. v. Chubb & Sons, Inc.*, 581 S.E. 2d 317, 319 (Ga. Ct. App. 2003). Applying that guidance here supports the clear meaning of the Policy language at issue—the loss needs to come directly from an actual, demonstrable, physical harm to the premises itself.

In addition to the Eleventh Circuit's decision in *Mama Jo's*, the Court is persuaded by the dozens of district court decisions across the country, including in Florida, dismissing nearly identical claims for insurance coverage due to COVID-19 related business income losses. Without listing them all here, the bottom line is clear: nearly every court to confront this issue in the context of identical or nearly identical policy language has dismissed claims against insurers for economic losses unaccompanied by a demonstrable physical alteration to the premises itself. *See, e.g.*, *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615-CIV, 2020 WL 5051581, at *8 (S.D. Fla.

CASE NO. 20-80749-CIV-CANNON/Brannon

Aug. 26, 2020); *Raymond H. Nahmad DDS PA v. Hartford Cas. Ins. Co.*, No. 1:20-CV-22833, 2020 WL 6392841, at *6 (S.D. Fla. Nov. 2, 2020); *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20 CV 2160, 2020 WL 5630465, at *2 (N.D. Ill. 2020), *reconsideration denied*, No. 20 CV 2160, 2021 WL 83758 (N.D. Ill. Jan. 10, 2021).

In sum, to trigger coverage under the plain and unambiguous language of the Policy, Plaintiff must allege actual physical damage to the premises itself.  Plaintiff has not done so.  Loss of access to a facility or temporary "suspension of normal operations" [ECF No. 25 ¶ 10] does not alone arise from direct physical loss to the insured property itself.   Count 2 for breach of contract therefore fails to state a claim upon which relief can be granted.  The same holds true for Count 1, Plaintiff's declaratory judgment count, in which Plaintiff seeks a declaratory judgment that the Policy covers its business income lost due to the COVID-19 pandemic and subsequent shutdown orders [ECF No. 25 ¶ 145].  The Court already has rejected that contention, leaving nothing on which to issue a declaration.  *See* 28 U.S.C. § 2201.  *See, e.g.*, *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, No. 220CV00401FTM66NPM, 2020 WL 5240218, at *3 (M.D. Fla. Sept. 2, 2020).

As devastating as the COVID-19 pandemic and resulting shutdown orders have been on businesses across the country, the Court is tasked with applying the plain terms of the Policy language at issue, and that language does not cover the losses Plaintiff suffered under the circumstances presented.[8]

---

[8] In light of the Court's ruling as to the Policy's threshold grant of coverage, the Court need not address the applicability of any of the Policy's exclusions.

CASE NO. 20-80749-CIV-CANNON/Brannon

**IV.   Conclusion**

**UPON CONSIDERATION** of the Motion, the full record, and being otherwise fully advised in the premises, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss [ECF No. 33] is **GRANTED**.

2. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED** as moot, and all deadlines are **TERMINATED**.

3. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Fort Pierce, this 29th day of March 2021.

_____
**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record